Aloysius J. STAUD et al.

v.

William STEWART and the Honorable Kendall H. Shoyer, Judge of the Court of Common Pleas of Philadelphia County.

Civ. A. No. 73–1149.

United States District Court, E. D. Pennsylvania.

Aug. 30, 1973.

Kremer, Krimsky & Luterman, Philadelphia, Pa., for plaintiffs.

William Stewart, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

BECHTLE, District Judge.

Each of the five plaintiffs, attorneys in good standing and authorized to practice law in Philadelphia, Pennsylvania, were served with a subpoena to appear with the files of his clients, or of his partners or associates, or former partners or associates before William Stewart, Esquire ("Stewart"). The latter was appointed by the Court of Common Pleas of Philadelphia County to conduct a special confidential judicial investigation.[1] The sole purpose of the investigation is to gather information from witnesses to be questioned *ex parte* under oath before a judge of the court from which a determination could be made whether sufficient evidence exist-

---

1. On October 28, 1971, President Judge D. Donald Jamieson issued an order, amending a prior one, thereby transferring · responsibility for the investigation into alleged solicitation of negligence cases by attorneys from a committee of the Philadelphia Bar to an examiner appointed by the court. By the same order, the examiner was granted the power to compel, by subpoena, the appearance of witnesses and the production of relevant documents. Later, Judge Shoyer was appointed the hearing judge of the Special Judicial Investigation.

ed to warrant bringing formal disciplinary proceedings against certain members of the Bar, including plaintiffs. Judge Kendall H. Shoyer, a member of the Common Pleas Court of Philadelphia, was appointed to hear the witnesses and make the determination.

Plaintiffs presented motions before Judge Shoyer to quash the subpoenas on the ground that they violated their right to due process of law because of the absence of any charges or of any orderly guide for the presentation of legal issues and the vagueness of the proceedings.[2] They also moved the judge to disqualify himself for the reason that allegedly he discussed and planned the conduct of the investigation with the special examiner in the absence of counsel on behalf of the witnesses.

After their motions were denied and their appeals to the Supreme Court of Pennsylvania dismissed, the five plaintiffs joined in bringing the civil rights action here involved to enjoin Judge Shoyer and Stewart from enforcing any subpoena served upon them and for damages. The following day, the plaintiffs were again called before Judge Shoyer to answer questions concerning their professional conduct. When they refused to answer or claim privilege, Judge Shoyer signed orders suspending four of the plaintiffs from the practice of law until such time as each of them indicates a willingness to appear and submit to interrogation and to answer such questions as he may feel free to an-

swer without in any way denying himself the available constitutional rights and privileges as stated in paragraph No. 6 of President Judge Jamieson's order of October 28, 1971.[3] On appeals from these orders, the highest court of Pennsylvania granted a petition for *supersedeas,* staying the orders pending the appeals which were later consolidated.[4] In the meantime, the five plaintiffs filed an application in this Court for the appointment of a three-judge court and to enjoin the defendants "from further acting under color of State law to deprive plaintiffs of their constitutional and civil rights."

Defendants have filed motions to dismiss, presently before me for disposition, on the grounds that: (1) this Court does not have subject matter jurisdiction because the complaint does not raise any substantial Federal question under the Civil Rights Act, 42 U.S.C. § 1983; and, (2) the complaint fails to state a claim against them which would constitute a violation of any federally protected rights. In the alternative, they ask this Court to abstain from ruling in this case.

The underlying theory for the grounds for the motion to dismiss is the assumption, in reliance on In re Disbarment Proceedings, 321 Pa. 81, 184 A. 59 (1936), that a Court of Common Pleas has the inherent power to investigate a lawyer's professional conduct and to order his appearance—even without an official subpoena—for the purpose of in-

2. The Supreme Court of Pennsylvania has adopted Rule 17, known as the Rules of Disciplinary Enforcement, 446 Pa. xxiv–xlv (1972). The rule became effective July 1, 1972, but does not apply to any special judicial investigation in existence at the time of the adoption (March 12, 1972) of the rule. See Rule 17–25.

3. Paragraph No. 6 of the order states: "The Court directs all members of its Bar to cooperate with the investigation. Any member of the Bar of this Court who fails to appear, to answer questions or to furnish records and other evidence in response to requests therefor by Special Counsel or by

this Court, except on valid ground of privilege or relevancy, having failed to furnish the Court with information necessary for it to determine whether he is entitled to continued certification to the public as fit to practice, shall upon proper proof of such failure to cooperate, be subject to disbarment. Any violation of this provision of the order, or any issue raised thereunder, including the imposition of discipline, shall be heard and determined by the judge appointed pursuant to paragraph 3 hereof."

4. January Term, 1973, No. 395 through No. 398.

quiring into his qualifications for continued certification as a qualified member of its Bar. They also point out that plaintiffs do not allege they are in danger of being deprived of their privilege against self-incrimination and do not suggest they will be disciplined without a full and fair hearing before an impartial court.

■ The states have the power to control the practice of law in their courts. However, that power cannot be exercised so as to ignore federally protected rights. N. A. A. C. P. v. Button, 371 U.S. 415, 439, 83 S.Ct. 328, 9 L.Ed. 2d 405 (1963). Procedural due process, including fair notice of any charges against him, is a federally protected right of an attorney. In re Ruffalo, 390 U.S. 544, 550–551, 88 S.Ct. 1222, 20 L. Ed.2d 117 (1968); Committee on Professional Ethics & Grievances of the Virgin Islands Bar Assn. v. Johnson, 447 F.2d 169 (3rd Cir. 1971). The opening sentence of defendant Stewart's brief in support of his motion to dismiss the complaint states: "Plaintiffs are members of the Bar of the Court of Common Pleas and are being investigated by that court pursuant to its inherent power to supervise the conduct of, and discipline the members of its Bar." Plaintiffs claim in their complaint that in the process of their investigation they are being deprived of due process of law. This claim is not a frivolous one. Therefore, this Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. § 1343(3).[5] Davis v. Honorable D. Donald Jamieson (E.D.Pa. December 20, 1972, C.A. No. 72–2154, p. 5).

Regarding the plaintiffs' application for the appointment of a three-judge court, 28 U.S.C. § 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statute, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute, unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

■ Plaintiffs have not pointed out any Pennsylvania statute, the enforcement of which they seek to restrain, upon the ground of its unconstitutionality. The application must be denied. E. g., Santiago v. Corporacion de Renovacion Urbana Y Vivienda de Puerto Rico, 453 F.2d 794 (1st Cir. 1972).

■ As to defendants' assertion that the complaint fails to set forth a claim upon which relief may be granted, this Court has authority to issue injunctive relief against the commission of acts in violation of a plaintiff's civil rights by state judges acting in their official capacity. Erdmann v. Stevens, 458 F.2d 1205, 1208 (2d Cir. 1972). The same authority exists over an officer appointed by a State Court. However, since Judge Shoyer's orders have been stayed and plaintiffs are free to practice law, this Court will refrain from deciding the question of injunctive relief pending the decision of the Supreme Court of Pennsylvania in the appeals of the four attorneys.

■■ In the exercise of his judicial function, a judge is immune from damage claims under 42 U.S.C. § 1983. Pierson v. Ray, 386 U.S. 547, 553–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Judge Shoyer's motion to dismiss the complaint as to the claim for damages

---

5. 28 U.S.C. § 1343(3), in part, provides:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

"(3) To redress the deprivation, under color or of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States . . . ."

against him will be allowed. A prosecutor has a similar immunity. Bauers v. Heisel, 361 F.2d 581, 587–589 (3rd Cir. 1966). However, whether Stewart, in his official capacity, has the status of a prosecutor will be determined after a hearing. His motion to dismiss the complaint will be denied without prejudice.

The defendants' request that this Court abstain from deciding this case will be denied. At this juncture, no ground for abstention appears in this case.[6]

---

6. A Federal Court will abstain from deciding a Federal question until the underlying or related state law issue is resolved in the state courts. See, Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Lake Carriers' Assn. v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972).