**Edythe Mae ROGERS**

v.

**SUPREME COURT OF VIRGINIA and Virginia Board of Bar Examiners.**

**Civ. A. No. 84-0027-R.**

United States District Court,
E.D. Virginia,
Richmond Division.

June 7, 1984.

Edythe Mae Rogers, pro se.

Gerald L. Baliles, Atty. Gen., James T. Moore, III, Sr., Asst. Atty. Gen., Neil A. G. McPhie, Asst. Atty. Gen., Richmond, Va., for defendants.

## OPINION AND ORDER

WARRINER, District Judge.

Presently before the Court is defendant Supreme Court of Virginia and Virginia Board of Bar Examiners' ripe motion to dismiss. Plaintiff has responded to this motion. Defendants Supreme Court of Virginia and Virginia Board of Bar Examiners have neglected to file a rebuttal. On 3 April 1984, this Court entered an order requiring the parties to file supplemental briefs with respect to the questions presented by *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Defendants filed their brief on 13 April 1984; plaintiff filed her brief 23 April 1984, and defendants replied to plaintiff's brief on 26

April 1984. The matter, therefore, is ripe for adjudication.

I conclude that although this Court has subject matter jurisdiction over the action, the complaint fails to state a claim under which relief can be granted (Fed.R.Civ.P. 12(b)(6)). Accordingly, for the reasons set forth below, the motion to dismiss is GRANTED.

Plaintiff is a black female who has applied, sat for, and failed the Virginia Bar Examination on four separate occasions: February, 1980; July, 1980; July, 1982; and February, 1983. The Virginia Board of Bar Examiners (Board), hence, has refused to license plaintiff to practice law. In July of 1980, and again in July of 1982, plaintiff availed herself of the opportunity provided by the Rules of the Board for unsuccessful examinees to review examinations with a Bar Examiner. Being unsatisfied, plaintiff petitioned the Supreme Court of Virginia to review the adverse action of the Board. Defendant Board filed a motion to dismiss plaintiff's petition on the grounds that the Supreme Court of Virginia lacked appellate and original jurisdiction to review adverse actions of the Board. The Supreme Court of Virginia notified plaintiff of its refusal of her petition for review. No opinion or reason was given.

Plaintiff brings this action in federal court under 15 U.S.C. §§ 1 and 15; the First, Fifth, and Fourteenth Amendments to the Constitution. Plaintiff invokes the jurisdiction of the Court under 28 U.S.C. § 1343; 42 U.S.C. §§ 1981, 1983, 1985(a) [sic] and 1988.[1]

---

1. Defendants have urged that this Court has no jurisdiction over the Virginia Board of Bar Examiners since service of process was improperly effected on the Attorney General of Virginia, not, as is proper, on the Secretary of the Board. In her *Addendum to the Memorandum in Opposition to Defendants' Motion to Dismiss*, at 2, plaintiff, however, states that pursuant to 42 U.S.C. §§ 1981 and 1983, this Court has personal jurisdiction over the members of the Board provided plaintiff amends her complaint to name the individual Board members as defendants. There is, however, no question raised that service on the Supreme Court of Virginia was not proper. Since at least one of the defendants

is properly before the Court, the issue raised by plaintiff's complaint as to that defendant may appropriately be decided.

Plaintiff also recognizes in her addendum that the Eleventh Amendment bars any suit by private party seeking to impose a liability which must be paid from public property or funds. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Plaintiff, therefore, proposes to amend her complaint to make monetary claims against only the individual members of the Board, who are to be served personally. As to the Supreme Court of Virginia, therefore, plaintiff seeks only declaratory and injunctive relief. Addendum at 4–5.

It is crucial to determining the propriety of granting defendants' motion to dismiss that one understand the exact nature of plaintiff's complaint as articulated in the various pleadings she has filed with this Court. Plaintiff complains of an interconnected sequence of acts by the Board of Bar Examiners and the Supreme Court of Virginia culminating in what she characterizes as the essence of her complaint:

It should be noted that Plaintiff is not asking this Court to review a determination of the merits of her case because she disagrees with the Virginia Supreme Court's decision on the merits of her case. Rather, she is asking this Court to determine whether the Virginia Supreme Court's refusal to entertain the merits of her case constitutes a violation of her right to due process of law.

*Plaintiff's Supplemental Brief in Opposition to Defendant's Motion to Dismiss* at 4.

Nor is plaintiff registering an appeal, on constitutional grounds, from the Supreme Court of Virginia's refusal to entertain her petition. Rather:

Plaintiff's complaint raises a general challenge to the procedures instituted by the Virginia Board of Bar Examiners, administrative arm of the Virginia Supreme Court, in the designing and grading of the Virginia Bar Examination. Further, plaintiff alleges in her complaint that the Virginia Bar Examiners administer the examination and distribute licenses after the administration of the Examination in constitutionally impermissible ways. (See Plaintiff's Complaint). Plaintiff raises the question *whether the refusal to consider her Petition is a Constitutionally permitted act within the license granting process.* (emphasis added). Id. at 5.

In other words, plaintiff's allegations as to the unconstitutionality *vel non* of the Board's examining procedures are not before this Court for adjudication. Rather, plaintiff sets forth the Board's procedures in grading and designing the exam only as a necessary preliminary to comprehending the heart of her complaint. Faced with a challenge to the constitutionality of the Board's policies on test design and scoring, the Supreme Court of Virginia "refused" plaintiff's petition for review. That refusal to hear such a constitutional challenge was *itself* an unconstitutional denial of due process, argues plaintiff.

But, plaintiff argues further, it is no personal denial of due process of law that she challenges. Instead, she complains of a general, a systemic policy, as to all unsuccessful examinees, whereby the Supreme Court of Virginia is enabled to refuse to hear petitions for review of allegedly unconstitutional Board policies.

The two kinds of claims which may be brought by an unsuccessful bar applicant were articulated by the Tenth Circuit in *Doe v. Pringle,* 550 F.2d 596, 597 (10th Cir.1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 225 (1977):

The first is a constitutional challenge to the state's general rules and regulations governing admission; the second is a claim, based on constitutional or other grounds, that the state has unlawfully denied a particular applicant admission.

In *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 485–86, 103 S.Ct. 1303, 1316–17, 75 L.Ed.2d 206, 224–25, the Supreme Court approved the *Doe* emphasis on the distinction between "general challenges to state bar admission rules and claims that a state court has unlawfully denied a particular applicant admission." As to the first category, the Supreme Court held, "United States District Courts ... have subject matter jurisdiction over general challenges to state bar rules, promulgated by state courts in non-judicial proceedings, which do not require review of a final state court judgment in a particular case."

As to the second category of challenge, the individual claim of deprivation, the Supreme Court was equally explicit as to the lack of jurisdiction of a district court:

They [district courts] do not have jurisdiction, however, over challenges to state court decisions in particular cases arising

out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional. Review of those decisions may be had only in this court. 28 U.S.C. § 1257.

*Id.*, 460 U.S. at 486, 103 S.Ct. at 1317, 75 L.Ed.2d at 225.

The *Feldman* court gave guidance in distinguishing attacks on the constitutionality of State bar rules, *per se*, promulgated by the supreme court of a State in its administrative capacity, from challenges of a judicial determination by a State court in which petitioner raises constitutional claims peculiar to himself.

In *Feldman*, two bar applicants filed petitions in the District of Columbia Court of Appeals, the functional equivalent of a State supreme court, asking for waivers of the District of Columbia Bar Admission Rule requiring that applicants have graduated from an American Bar Association approved law school. The District of Columbia Court of Appeals denied the petitions, whereupon the applicants filed complaints in the United States District Court for the District of Columbia challenging the District of Columbia Court of Appeals' denial of their waiver petition. The United States District Court for the District of Columbia dismissed the complaints on the ground that it lacked subject matter jurisdiction. The United States Court of Appeals for the District of Columbia Circuit reversed the United States District Court, and held that the District Court had jurisdiction to review the denial of the applicants' requests for waivers of the Bar Admission Rule.

On certiorari, the United States Supreme Court first distinguished the judicial function of a State supreme court in denying an applicant a license to practice law on unconstitutional grounds and the administrative function of such a court, in promulgating rules, themselves unconstitutional. As to the judicial function the Supreme Court quoted its early holding in *Prentis v. Atlantic Coast Line*, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908):

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation on the other hand looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power .... [The nature of a proceeding] depends not upon the character of the body but upon the character of the proceedings."

*Feldman*, 460 U.S. at 477, 103 S.Ct. at 1312, 75 L.Ed.2d at 219.

Applying this standard, the Supreme Court held that the proceedings in the District of Columbia Court of Appeals surrounding Feldman's and Hickey's petitions for waiver were judicial in nature, not legislative, nor ministerial, nor administrative. the District of Columbia Court of Appeals was not looking to the future in attempting to change existing conditions; nor was it engaging in rule-making; nor was it specifying the requirements of eligibility or the course of study for applicants for admission to the Bar. Neither did the District of Columbia Court of Appeals merely engage in routine ministerial action. Instead, the Court was called upon to investigate, declare, and enforce the rules, as they stood on present or past facts and under laws supposed already to exist. *Feldman*, 460 U.S. at 479–80, 103 S.Ct. at 1313–1314, 75 L.Ed.2d at 220–221.

Of crucial importance to the case at Bar was the Supreme Court's holding that its characterization of the proceedings on Feldman's and Hickey's petitions as judicial, did not finally dispose of the case. *Feldman*, 460 U.S. at 487, 103 S.Ct. at 1317, 75 L.Ed.2d at 222. There remained "allegations in the complaints ... [that] involve a general attack on the constitutionality of Rule 46I(b)(3)."

Because of the significance of the Supreme Court's holding, it is well to analyze carefully those actions by the District of Columbia Court of Appeals which the Supreme Court did characterize as judicial, not susceptible of review by a federal dis-

trict court, and those which it denominated a general attack on the constitutionality of the rules, a dispute over which a federal district court does have jurisdiction. The court held:

> [I]t is clear that [plaintiffs'] allegations that the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying their petitions for waiver and that the court acted unreasonably and discriminatorily in denying their petitions in view of its former policy of granting waivers to graduates of unaccredited law schools ... required the district court to review a final judicial decision of the highest court of the jurisdiction in a particular case .... The district court, therefore, does not have jurisdiction over these elements of the respondents' complaint.

*Feldman*, 460 U.S. at 486, 103 S.Ct. at 1317, 75 L.Ed.2d at 225.

To this was contrasted:

> The respondents' [plaintiffs below] claims that the Rule is unconstitutional because it creates an irrebuttable presumption that only graduates of accredited law schools are fit to practice law, discriminates against those who have obtained equivalent legal training by other means, and impermissibly delegates the District of Columbia Court of Appeals' power to regulate the Bar to the American Bar Association, do not require review of a judicial decision in a particular case. The District Court, therefore, has subject matter jurisdiction over these elements of the respondents' complaints.

*Feldman*, 460 U.S. at 487, 103 S.Ct. at 1317, 75 L.Ed.2d at 225–226.

If plaintiff here claims that the rules themselves are constitutionally sound but that the Board of Bar Examiners and the Supreme Court treated her unfairly because she is black, then under *Feldman* she has no recourse to this Court, but must appeal to the Supreme Court of the United States. Indeed, the *Feldman* court quoted approvingly the holding of the Court of Appeals in *Doe v. Pringle*, 550 F.2d 596, 599 (10th Cir.1976):

> We concur in the District Court's finding that it is without subject matter jurisdiction to review a final order of the [state] Supreme Court denying *a particular application for admission* to the [state bar]. This Rule applies even though ..., the challenge is anchored to alleged deprivations of federally protected due process and equal protection rights.

*Feldman*, 460 U.S. at 485, 103 S.Ct. at 1316, 75 L.Ed.2d at 224.

■ In other words, where a State supreme court denies an applicant admission to the bar, even if that denial is in flagrant and outrageous violation of plaintiff's constitutional rights and the State's own rules, that denial must be appealed to the Supreme Court of the United States. As long as plaintiff complains only that her particular constitutional rights were violated by such an action of a State Supreme Court, a federal district court has no jurisdiction.

If, on the other hand, plaintiff complains that the rules themselves are unconstitutional and that the operation of these unconstitutional rules has meant that she, a black, was not admitted to the Virginia bar then she states a claim cognizable in the federal courts under *Feldman.*

The point of *Feldman* is that no State Supreme Court, in its administrative or legislative capacity, may promulgate regulations, adopt policies, or authorize practices which, in and of themselves, violate the Constitution.

A post-*Feldman* analysis of a general constitutional challenge to State bar of rules under *Feldman* is *Tofano v. The Supreme Court of Nevada*, 718 F.2d 313, 314 (9th Cir.1983). In Tofano, the Court of Appeals held that to the extent that appellant sought a declaration that Nevada bar grading procedures were unconstitutionally vague on their face, his challenges were general. The district court was upheld both in asserting subject matter jurisdiction over these general challenges and in dismissing them for failure to state a claim. Similarly, the district court had subject matter jurisdiction over appellant's conten-

tion that the examiners' failure to use a pre-set or model answer for grading essay questions vested unconstitutional discretion in the grader, resulting in an unconstitutionally vague standard for a passing grade. This complaint was likewise dismissed by the district court for failure to state a claim under Fed.R.Civ.P. 12(b)(6). The Court of Appeals affirmed.

In *Lowrie v. Goldenhersh*, 716 F.2d 401, 407 (7th Cir.1983), the Court of Appeals addressed a challenge to an Illinois Supreme Court rule by which a foreign licensed attorney might practice law in Illinois without further examination provided the applicant had resided in, and actively and continuously practiced law in the foreign State for a period of at least five years out of the immediately preceding seven. The appeals court initially looked at the complaint to "see if the general may be separated from the personal," noting that a United States District Court has no jurisdiction over federal claims which are so inextricably intertwined with the State court's action as to amount to a district court's being asked to review the State court decision, a task it is jurisdictionally not permitted to perform.

The Lowrie court addressed specifically the extent to which this "intertwining" became so inextricable as to deprive a federal court of jurisdiction. Despite the fact that Lowrie's complaint could have been read as merely a revised application for a waiver of the foreign license rule, previously denied him by the Illinois Supreme Court; despite the additional argument that Lowrie was simply seeking to enlist the assistance of the federal court in securing the denied waiver; even despite the strong personal thrust of Lowrie's complaint, albeit bolstered by explicit constitutional allegations; despite the plethora of personal detail incorporated in the complaint—despite these benchmarks of a personal complaint grounded on constitutional deprivation, the Seventh Circuit nevertheless discerned the general constitutional challenge mandated by *Feldman:*

In our view, Lowrie's complaint under *Feldman* may be considered, apart from all the surplusage, as a general attack on the constitutionality of the rule sufficient to give the district court jurisdiction and to defeat the jurisdictional challenge of the defendant's Federal Rule of Civil Procedure 12(b)(1) motion to dismiss. The Court of Appeals also held that the Illinois rule survived an attack on its constitutionality, and therefore, affirmed district court's dismissal under Fed.R. Civ.P. 12(b)(6), for failure to state a claim.

The case most closely related to *Feldman* itself is *Howell v. The State Bar of Texas*, 710 F.2d 1075, 1077 (5th Cir.1983). The Court of Appeals had reversed the district court's ruling that it lacked subject matter jurisdiction. The Supreme Court, 460 U.S. 1065, 103 S.Ct. 1515, 75 L.Ed.2d 942 (1983), vacated that judgment and remanded the case to the Court of Appeals for further consideration in light of *Feldman*. Upon examination of Howell's claims, the Court of Appeals held that all but one of the constitutional claims presented to the district court were "inextricably intertwined" with the Texas State court's reprimand of Howell in a judicial proceeding.

The Court of Appeals rejected as general constitutional attacks Howell's allegations that he was deprived of his right to a jury trial as well as his right to a fundamentally fair trial. The Court of Appeals held:

With respect to these claims, Howell has done nothing more than ask the district court to sit as an appellate court and review the State court judgment. As the Supreme Court perfunctorily stated, [in *Feldman* ] "[t]his the District Court may not do."

*Id.* at 1077.

The Fifth Circuit characterized as a general constitutional challenge Howell's attack on the State's disciplinary scheme, *viz*, that the disciplinary rules on their face were void as repugnant to Due Process, Equal Protection, and the Privileges and Immunities Clauses of the Fourteenth Amendment to the United States Constitu-

tion. The Court of Appeals remanded to the district court for a determination as to whether or not this general challenge was meritorious.

In the cases post-*Feldman*, there has been consensus among the courts of appeals that the first task of a district court in determining whether or not it has subject matter jurisdiction is to winnow out those portions of plaintiff's allegations which mount a generalized attack on the constitutionality of some part of the licensing scheme of a given State.

■ Proceeding to this task it appears that plaintiff has stated a generalized attack on the licensing procedures of the Virginia Board of Bar Examiners and the Virginia Supreme Court sufficient to grant jurisdiction on this Court to hear her claim. Plaintiff casts her claim as a constitutional deprivation, which she has standing to contest having suffered from it, which exists by reason of a Virginia Supreme Court policy which permits the court to refuse to review decisions of the Board of Bar Examiners.

In *Feldman*, the Supreme Court remanded to the District Court of the District of Columbia for consideration of whether or not plaintiffs' claims that the District of Columbia refusal to license attorneys other than graduates of ABA-approved law schools, was or was not unconstitutional.[2] Accordingly, this Court, having determined that it does have jurisdiction over plaintiff's claim must likewise perform that same task of determining whether or not her claim has any validity. It is the conclusion of this Court that it does not.

■ Va. Code §§ 54–53 through 54–58 establish the Virginia Board of Bar Examiners, its composition, its powers, rules, and regulations. The Supreme Court of Virginia has no explicit statutory authority to review the Board's decisions or to question judicially its evaluation of a particular candidate. In *Woodard v. Virginia Board of Bar Examiners*, 454 F.Supp. 4, 5 (E.D.Va.),

2. The Supreme Court in *Feldman* deliberately did not reach the question of whether *res judicata* foreclosed litigation on the elements of the complaints which involved a general challenge to the constitutionality of District of Columbia Rule 46I(b)(3). *Feldman* 460 U.S. at 487, 103 S.Ct. at 1317, at 75 L.Ed.2d at 226. The parties have briefed this question fully.

The nature of plaintiff's complaint, however, raises a general constitutional challenge which by its very nature could not have been raised before the Supreme Court of Virginia, except possibly on a petition for rehearing. Petitioner complains that the Supreme Court's very ability to pick, choose, and refuse those applications of disappointed examinees which they will or will not hear is itself an unconstitutional step in the Virginia process by which attorneys are licensed to practice law. There is no way that petitioner logically could have raised such an argument: had the hearing been held, she would have had no standing to protest the *absence* of a hearing, regardless of whether or not the Supreme Court's ability to exercise discretion in granting such hearing were unconstitutional.

In *Wood v. Orange County,* 715 F.2d 1543, 1547 (11th Cir.1983), addressed the related question of whether a federal court had jurisdiction to hear even generalized attacks on the constitutionality of State supreme court-promulgated rules, if plaintiff had an opportunity to present such claims in a State court proceeding and failed to do so. The *Wood* court analyzed at length footnote 16 in *Feldman* where the Supreme Court apparently endorsed the rule that a federal district court may not assume jurisdiction over issues that the plaintiff failed to present to State courts. I agree, however, with the *Wood* court's analysis of this problem:

The rule can apply only where the plaintiff had a reasonable opportunity to raise his federal claim in State proceedings. Where the plaintiff has had no such opportunity, he cannot fairly be said to have 'failed' to raise the issue. Moreover, an issue that a plaintiff had no reasonable opportunity to raise cannot properly be regarded as part of the State case. In *Feldman*'s language, the issue that such a plaintiff asks the federal court to decide is not 'inextricably intertwined' with the State court's judgment .... Stating it another way, because the issue did not figure, and could not reasonably have figured, in the State court's decision, the district court has 'original' jurisdiction over the issue as required by 28 U.S.C. § 1331 .... For the foregoing reasons, we hold that the [*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)] bar can apply only to issues that the plaintiff had a reasonable opportunity to raise.

Given the facts of the case before this Court, it is plain that plaintiff here had no "reasonable opportunity to raise" her § 1983 claim against the Supreme Court of Virginia in any State court proceeding.

aff'd, 598 F.2d 1345 (4th Cir.1979), however, the Court stated:

> [I]t is well settled that the [Supreme] Court retains such inherent power "[I]t is universally recognized that the highest court of the state may prescribe rules relating to admissions to the Bar even in the absence of a statute . . . ." *Brown v. Supreme Court of Virginia*, 359 F.Supp. 549, 554 (E.D.Va.) (three judge court, *aff'd*, 414 U.S. 1034 [94 S.Ct. 534, 38 L.Ed.2d 327] . . .) (1973) [*reh. den. sub nom. Titus v. Supreme Court of Virginia*, 414 U.S. 1138, 94 S.Ct. 886, 38 L.Ed.2d 764 (1974)].

It is equally well settled under Va. Code § 8.01–675 that the right of appeal to the Supreme Court of Virginia is not absolute.[3] This principle was early stated in *McCue v. Commonwealth*, 103 Va. 870, 49 S.E. 623, 632 (1905):

> We have no such practice as an absolute right of appeal in civil or criminal cases . . . . It is as much the duty of the court or judge to deny the petition when of opinion that the decision complained of is plainly right as it is to grant it when any doubt exists as to the propriety of the decision.

In *Saunders v. Reynolds*, 214 Va. 697, 204 S.E.2d 421, 424 (1974), the Supreme Court spoke to the question of whether a refusal to grant a writ of error was related to the merits of a claim:

> We state unequivocally that a decision to grant or refuse a petition for writ of error is based on one equally-applied criterion—the merits of the case.

The Supreme Court in *Ross v. Moffitt*, 417 U.S. 600, 606, 94 S.Ct. 2437, 2441, 41 L.Ed.2d 341 (1974) stated that the right of an appeal from the decision of a trial court is not a constitutionally guaranteed right: "[A] state is not obliged to provide any appeal at all for criminal defendants." If no constitutional deprivation be made out

by a State's refusal to allow appeal from a decision taking life, liberty, or property from a criminal defendant, assuredly the State is not constitutionally required to provide an appeal from a decision of its administrative arm, the Board of Bar Examiners.

The Court also held that where a State makes available an appellate process that process must be equally available to all who would take advantage of it. *Id.* at 607, 94 S.Ct. at 2442. This holding, however, in no way mandates that any State supreme court give up its right to choose which of the petitions for a writ of error coming before it it will or will not hear.

In other words, the Supreme Court has focused on equality of access to the appellate process—an equality which neither race, indigency, nor any other factor can be permitted to block. Important, however, is that this guaranteed equality of access has been required by the Supreme Court only where the State establishes an appeal as of right. Where the review is discretionary the concept of equality of access loses its meaning. The Ross court, for example, held that the State was not obliged to provide counsel for the indigent appellant seeking discretionary review. *Id.* at 615, 94 S.Ct. at 2446. "The duty of the State under our cases . . . is . . . to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the State's appellate process." *Id.* at 616, 94 S.Ct. at 2446.

If such be the extent of the State's obligation to a criminal defendant, its duty to a disappointed applicant to the bar can be no higher. Plaintiff, in short, received all the benefit Virginia extends to any appellant: not a right to be heard by the Supreme Court, but a right to petition for such a hearing and have the petition considered. This guarantee is not tantamount to saying that a Supreme Court of a State must give an actual hearing to all who seek a hearing.

---

**3.** Va. Code § 8.01–675 states in pertinent part: The justice or justices to whom the petition is referred, if of opinion that the decision complained of ought to be reviewed, may allow an appeal.

Indeed, in *McCue*, the Supreme Court of Virginia stated, "Beginning with 1854, our records disclose cases, involving every form of felony and every degree of punishment applicable to that crime in which the order entered upon the petition is that 'the court, deeming the judgment complained of plainly right, does reject the petition' upon that ground." *McCue*, 103 Va. 870, 49 S.E. at 632.

It is true that, properly speaking, plaintiff offered to the Supreme Court of Virginia a "Petition for Review of Adverse Action by the Virginia Board of Bar Examiners." Nor did the Supreme Court in its order of 14 October 1983 specifically state it had considered the merits and rejected petitioner's claim. The conclusion that the Court did so is inescapable.[4] The Supreme Court clearly announced that it had considered all of the pleadings in the case, and had then refused the petition. No other conclusion is possible than that the Supreme Court determined that petitioner's claim was meritless.

The right of the Supreme Court of Virginia so to determine when or when not to give a hearing to a petitioner is well within its judicial discretion; therefore, such refusal, and more specifically, the power to so refuse, cannot be called a constitutional violation of plaintiff's rights.

## CONCLUSION

Because plaintiff, although properly invoking the jurisdiction of this Court to examine a general challenge to the constitutionality of the procedures by which the Supreme Court of Virginia licenses attorneys, has failed to state a claim upon which relief can be granted, the defendants' motion to dismiss is GRANTED.

And it is so ORDERED.

4. The order states in relevant part:
    On consideration of the Petition for Review of Adverse Action by the Virginia Board of Bar Examiners, filed *pro se*, by Edythe M. Rogers, the respondent's motion to dismiss filed in answer, the petitioner's memorandum

in opposition to respondent's motion to dismiss, the respondent's reply memorandum in support of the motion to dismiss and the petitioner's reply thereto, the Court refuses the petition filed in the above-styled case.